**NOT FOR PUBLICATION**                                                    **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____

DERICK P. BROWN,                         :

        Petitioner,                 :        Civil Action No. 13-7266 (SRC)

        v.                                  :

ROY L. HENDRICKS, et al.,             :        **OPINION**

        Respondents.              :
_____

**CHESLER**, District Judge

      Petitioner, a native and citizen of Sierra Leone and a removal-period detainee confined at the Essex County Correctional Facility in Newark, has submitted a § 2241 petition ("Petition") unaccompanied by an in forma pauperis application or $5 filing fee.  See ECF No. 1.  Petitioner asserts that, on April 11, 2012, his Immigration Judge ordered him removed to his country of origin, and that decision was entered while Petitioner was still serving the prison term underlying his removal.  See id. at 3.  Petitioner did not appeal the immigration judge's order.  See id.  He also asserts that he was taken in custody of the Department of Homeland Security ("DHS") on November 12, 2013, see id., presumably upon his release from penal confinement.  Petitioner maintains that, since he was ordered removed on April 11, 2012, he should be released from confinement pursuant to the holding of Zadvydas v. Davis, 533 U.S. 678 (2001).  See id. at 3-4.

      Petitioner errs.  8 U.S.C. § 1231(a)(1)(A) provides that the government has a ninety-day period to remove an alien ordered removed from the United States ("removal period").  This removal period starts on the *latest* of the following: (a) the date when the order of removal becomes administratively final (that is, when the appeal to the Board of Immigration Appeals

was either taken and ruled upon, or the time to appeal expired); (b) if the removal order is judicially reviewed and, in addition, if a circuit court ordered a stay of the removal, at the date of the court's final order as to that removal; or (c) if the alien is detained or confined (except under an immigration process), the date when the alien is released from that underlying confinement. See id. § 1231(a)(1)(B).[1]  Here, Petitioner's removal period was triggered when he was released from his penal confinement.

Moreover, in Zadvydas, the Supreme Court extended the removal period by holding that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.  Recognizing that this holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "*presumptively* reasonable period of detention." Id. at 700-01 (emphasis supplied).  However, the Court stressed, in no ambiguous terms, that even

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. . . .  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

---

[1] "[T]he statute provides that the removal period begins on the latest of several dates.  The passing of one date does not stop the operation of the statute. . . .  Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred.  If there is another potential event, there is another potential beginning date for the removal period.  The only sensible reading of this provision is that [DHS] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date." Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000).

Since detention during the removal period is mandatory, see § 1231(a)(2), it follows that Petitioner's Zadvydas-based claim is facially unripe and will remain such until: (a) at least six months expire from November 12, 2013, that is, the date of his release from penal custody; *and* (b) he is able to shift the burden to Respondents by asserting facts showing that there is no significant likelihood of his removal to Sierra Leone in the reasonably foreseeable future.[2]

Since, as of now, Petitioner has been in the DHS custody for less than six months, his Petition is subject to dismissal as unripe. Petitioner may raise his Zadvydas-based claim by means of a new and separate § 2241 petition if this claim ripens. Meanwhile, in connection with this matter, he is obligated to submit his in forma pauperis application or $5 filing fee. See Hairston v. Gronolsky, 348 F. App'x 716, 718 (3d Cir. Oct. 15, 2009) (observing that the prisoner's legal obligation to pay the filing fee or obtain in forma pauperis status is automatically incurred by the very act of raising a legal claim (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999))). An appropriate Order follows.

       /s/
**STANLEY R. CHESLER,**
**United States District Judge**

Dated: April 8th, 2014

---

[2] Moreover, if Petitioner was not taken into the DHS custody immediately upon his release from penal confinement, his six-month presumptive removal period still started to run only on the date of his entry in the DHS custody, i.e., November 12, 2013. See Sylvain v. Att'y General, 714 F.3d 150 (3d Cir. 2013) (the DHS retains the authority to take aliens into mandatory detention under § 1226(c) even if it does not do so immediately upon their release from criminal custody). Furthermore, this 6-month removal period would be extended, and Petitioner may remain in detention during such extended period, if he "acts to prevent [his] removal." 8 U.S.C. § 1231(a)(1)(C); see also Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (the temporal limitation built into the governing legal regime "does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock").